UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-60671-Civ-WILLIAMS/TORRES

EFRAIN ALAMO-CRUZ and
MARIA ALAMO-CRUZ,
as assignees of ROBIN A. CROCE,

    Plaintiffs,

v.

EVANSTON INSURANCE COMPANY
F/K/A ALTERRA EXCESS & SURPLUS
INSURANCE COMPANY,

    Defendant.

_____/

## ORDER ON DEFENDANT'S MOTION
## FOR LEAVE TO AMEND ITS AFFIRMATIVE DEFENSES

This matter is before the Court on Evanston Insurance Company F/K/A Alterra Excess & Surplus Insurance Company's ("Defendant") motion for leave to amend its affirmative defenses to Efrain Alamo-Cruz's ("Mr. Cruz") and Maria Alamo-Cruz's ("Mrs. Cruz") (collectively, "Plaintiffs") second amended complaint. [D.E. 87]. Plaintiffs responded to Defendant's motion on July 15, 2019 [D.E. 98] to which Defendant replied on July 22, 2019. [D.E. 103]. Therefore, Defendant's motion is now ripe for disposition. After careful consideration of the motion, response, reply, relevant authority, and for the reasons discussed below, Defendant's motion is **GRANTED**.

# *I. BACKGROUND*

Plaintiffs filed this action on April 5, 2017 [D.E. 1] seeking declaratory relief in count 1, breach of contract in count 2, and common law bad faith in count 3 because of Defendant's denial of insurance coverage for the claims Plaintiffs asserted in a state court action against Affordable Treemen, Inc. ("Affordable Treemen"), and its president Robin A. Croce ("Ms. Croce"). This action relates back to an incident that occurred on June 1, 2011 when Mr. Cruz was performing tree trimming services for Affordable Treemen. On that date, an electric saw came loose and/or malfunctioned, cutting Mr. Cruz's harness and causing him to fall 30 feet to the ground. [D.E. 20-1]. Mr. Cruz suffered severe and permanent injuries as a result of the fall.

Plaintiffs' accident was reported to Defendant which denied insurance coverage for Mr. Cruz's claim against Affordable Treemen on August 29, 2012 on the basis that the applicable insurance policy (the "Policy") excludes any recovery for independent contractors:

> This insurance does not apply to 'bodily injury', 'personal and advertising injury', or 'medical payments' to any independent contractor, subcontractor, casual laborer or volunteer worker, or to any employee of any independent contractor, subcontractor, while performing work for you.

[D.E. 20-2] (the "Independent Contractors Exclusion").

The Policy was issued to Affordable Treemen for the period of May 11, 2011 through May 11, 2012 and has an aggregate limit of liability of $1,000,000. [D.E. 20-2]. Section I of the Policy provides, in relevant part, the following:

> Insuring Agreement
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply . . . .

*Id*. Section II of the Policy, under the section entitled "Who Is An Insured?" states, in pertinent part, that "[i]f you are designated in the Declarations as . . . [a]n organization other than a partnership, joint venture or limited liability company, you are an insured. Your 'Executive officers' and directors are insureds, but only with respect to their duties as your officers or directors." *Id*.

After Evanston denied insurance coverage, Plaintiffs filed suit against Affordable Treemen, but that action was later dismissed without prejudice following a notice of dismissal that Plaintiffs filed on February 24, 2014. On December 8, 2014, Plaintiffs sent a settlement demand to Evanston requesting $1 million dollars to settle the claims against Ms. Croce and Affordable Treemen. Evanston denied Plaintiffs' demand on December 24, 2014 and disclaimed coverage under the Independent Contractors Exclusion.

Thereafter, Plaintiffs filed suit against Affordable Treemen and Ms. Croce on January 20, 2015 in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida. [D.E. 20-1]. The state complaint included claims for negligence against Affordable Treemen in Count 1 and negligence against Ms. Croce in Count 2. Plaintiffs alleged that Ms. Croce was the President of Affordable Treeman and that she breached her duties and responsibilities owed to Mr. Cruz.

3

The state complaint also alleged that Mr. Cruz's relationship with Affordable Treemen was that of an independent contractor. [D.E. 20-1] ("Mr. Alamo-Cruz's relationship with [Affordable Treemen] was that of an independent contractor."). Evanston refused to defend either Affordable Treemen or Ms. Croce based on the terms of the underlying insurance policy.

On February 17, 2017, a jury awarded Mr. Cruz $20,565,991 against Affordable Treemen and Ms. Croce, jointly and severally. The jury also awarded Mrs. Cruz a final judgment in the amount of $2,500,000 against Affordable Treemen and Ms. Croce, jointly and severally. [D.E. 20-4]. On May 25, 2017, Ms. Croce assigned Plaintiffs "all rights, claims, actions, or causes of action" that she may have against Evanston relating to the events of the state court action. [D.E. 20-5]. Accordingly, Plaintiffs seek to enforce Ms. Croce's assignment against Evanston in this action.

## II. APPLICABLE PRINCIPLES AND LAW

Federal Rule of Civil Procedure 15(a) governs amendments to pleadings. A party may amend any pleading once as a matter of right before a responsive pleading has been filed or within twenty-one (21) days after serving the pleading if no responsive pleading is allowed. *See* Fed. R. Civ. P. 15(a)(1). In all other situations, the amending party must obtain written consent from the opposing party or leave of the court to amend the pleading. *See* Fed. R. Civ. P. 15(a)(2). The rule declares that leave to amend "shall be freely given when justice so requires." *Id*. If the underlying facts or circumstances relied upon by a plaintiff may be a

proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. *See Foman v. Davis,* 371 U.S. 178, 182 (1962).

Any amendments leading to a modification of the required pretrial scheduling order are subject to a "good cause" standard of scrutiny. Fed. R. Civ. P. 16(b)(4). That means that after the deadline for amending pleadings set forth in a scheduling order has passed the party seeking the amendment must show good cause why leave to amend the complaint should be granted. *See e.g., Ray v. Equifax Info. Servs., LLC*, 2009 WL 977313, *1 (11th Cir. 2009) (citing *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998)). And a district court need not allow an amendment where allowing the amendment would cause undue prejudice to the opposing party. *See Bryant v. Dupree,* 252 F.3d 1161, 1163 (11th Cir. 2001).

Of course, the grant or denial of an opportunity to amend is within the discretion of the district court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules. *Id.* In the absence of any apparent or declared reason the leave sought should, as the rules require, be "freely given." *Id.* Substantial reasons justifying a court's denial of a request for leave to amend include undue delay, bad faith or dilatory motive on the part of the movant, and repeated failure to cure deficiencies by amendments previously allowed. *See, e.g., Well v. Xpedx*, 2007 WL 1362717, *1 (M.D. Fla. 2007) (citing *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1319 (11th Cir. 1999)).

5

Even when the amendment is sought because of new information obtained during discovery, it is not an abuse of discretion to deny leave to amend if the moving party unduly delays pursuit of the amended pleading. *See, e.g., United States v. $172,760 in U.S. Currency*, 2007 WL 1068138 (M.D. Ga. 2007). Additionally, a district court may properly deny leave to amend when an amendment would be futile. *See Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262-3 (11th Cir. 2004); *see also Eveillard v. Nationstar Mortg. LLC*, 2015 WL 1191170, at *6 (S.D. Fla. Mar. 16, 2015) ("The law in this Circuit is clear that 'a district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile.'") (quoting *Hall*, 367 F.3d at 1263). "When a district court denies the plaintiff leave to amend a complaint due to futility, the court is making the legal conclusion that the complaint, as amended, would necessarily fail." *St. Charles Foods, Inc. v. Am.'s Favorite Chicken Co.*, 198 F.3d 815, 822 (11th Cir. 1999). This determination is akin to a finding that the proposed amendment would not survive a motion to dismiss. *See Christman v. Walsh*, 416 F. App'x 841, 844 (11th Cir. 2011) ("A district court may deny leave to amend a complaint if it concludes that the proposed amendment would be futile, meaning that the amended complaint would not survive a motion to dismiss.").

## III. ANALYSIS

Defendant's motion seeks leave to add two affirmative defenses: (1) fraud in the inducement and (2) duress. Defendant argues that it has recently discovered that there was a secret agreement between Plaintiffs and the insureds in the prior action that is replete with fraud and duress. More specifically, Defendant alleges that Plaintiffs and Ms. Croce conspired in April 2016 to *not* execute a judgment against Ms. Croce or her personal belongings:

> In an effort to move this forward without any further delay, my clients are willing to reach an agreement whereby my clients agree not to execute on the judgment against her assets, as detailed in the letter. That is a tremendous protection that has been offered to her, the value of which she obviously has no understanding. Rejecting the opportunity will only result in a judgment against her that will be filed, and that my clients will execute upon.

[D.E. 87].

Plaintiff then alleges that a month before trial (where the parties agreed to only litigate damages), the parties reached a more formalized agreement to not execute any judgment against Ms. Croce or Affordable Treemen:

> This letter sets forth the essential terms of the parties' agreement, which are as follows:
> (1) The case will proceed to a trial on damages in this case, which shall proceed if permitted by the Court, on the current trial docket.
> (2) With respect to the monetary judgment entered and filed following the trial on damages, the plaintiffs agree not execute the judgment on the assets of Ms. Croce or Affordable Treemen, Inc. Ms. Croce and Affordable Treemen, Inc. agree not to appeal the final judgment.
> . . .
> (5) The terms of this agreement will apply for the full pendency of this action, which includes any subsequent coverage or extra-contractual suits against Ms. Croce and Affordable Treemen, Inc.'s insurer.

*Id*. Defendant suggests that this agreement made the trial a sham and that the underlying judgment that awarded Plaintiffs more than $23 million dollars is tainted. Because of this conspiracy Defendant seeks to include two additional affirmative defenses.[1]

Defendant argues that there is good cause for an amended answer because of new information revealed at the depositions of Plaintiffs' counsel, Michael Hersh ("Mr. Hersh") and Ms. Croce that took place on June 19, 2019. Defendant believes that the underlying judgment is unenforceable because (1) Plaintiffs fraudulently induced Ms. Croce to enter into an agreement to collect damages, and (2) Ms. Croce did so under duress. That is, Ms. Croce entered into an agreement to eliminate her financial exposure in exchange for an agreement she that not contest any damages at trial or on appeal. Defendant also suggests that leave to amend should be granted because the proposed defenses will not delay discovery or cause any material prejudice.

Plaintiffs oppose Defendant's motion for several reasons. First, Plaintiffs argue that the motion to amend is five months late because the deadline to amend pleadings passed on February 15, 2019. [D.E. 56]. Second, Plaintiffs claim that the email that Defendant relies upon for its proposed defenses was produced back in October 2017 and that Defendant should have discovered it long ago. Third, Plaintiffs contend that Defendant sat on its hands for nearly two years between the

---

[1] Defendant notes that when it deposed Ms. Croce, she testified that Plaintiffs' counsel threatened her into signing the 2016 agreement because, prior to trial, Plaintiffs' counsel informed her that if she refused to do so, he would "watch her burn."

8

filing of this case on April 5, 2017 and the deadline to amend pleadings on February 15, 2019. Plaintiffs further accuse Defendant of jeopardizing the existing trial date of January 21, 2020 [D.E. 56] because the proposed defenses may require the reopening of discovery to learn what took place in December 2016. Finally, Plaintiffs argue that – even if one ignores the untimeliness, lack of good cause, and the potential prejudice to Plaintiffs at this stage of the case – Defendant's motion should be denied because the affirmative defenses are futile as a matter of law.

There is no dispute that the deadline to amend pleadings passed long ago. The only question is whether Defendant has established good cause and met the requirements of Rule 15(a) and 16(b). *See, e.g., Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) ("If we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure."). The good cause standard precludes modification unless the schedule cannot be met despite the diligence of the requesting party. *See* Fed. R. Civ. P. 16 Advisory Committee Notes to 1983 Amendment; *see also Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) ("If [a] party was not diligent, the [good cause] inquiry should end.").

Here, Defendant's motion is well taken because it was not until the depositions of Ms. Croce and Mr. Hersh that concrete evidence of a conspiracy came to light. Plaintiffs argue, on the other hand, that the email Defendant relies upon was produced in October 2017 and that Defendant should have known of this

9

conspiracy long ago. This argument is unpersuasive because fraud by its nature involves deception, trickery, and concealment. This single email does not, without more, give rise to a cognizable defense of fraud; further discovery was required. While Plaintiffs claim that Defendant should have deposed Ms. Croce and Mr. Hersh prior to June 2019 (to discover the conspiracy at an earlier date), Defendant did so well in advance of the discovery period. And it is unthinkable to suggest that Defendant should have discovered a fraud long ago when the deposition testimony of non-party witnesses was the light that revealed the conspiracy that took place between Ms. Croce and Mr. Hersh in December 2016.

We are also unpersuaded that Defendant's delay will materially jeopardize the Scheduling Order in this case. Discovery closed on July 5, 2019 and trial does not commence until January 21, 2020. [D.E. 20]. Plaintiffs suggest that several dates will need to be extended to account for any additional discovery that may be needed. But, Plaintiffs never articulate what additional discovery is required. All relevant witnesses have been deposed and Defendant does not seek an extension of the discovery period based on the proposed defenses. It also appears that there are a limited number of witnesses with personal knowledge of the facts related to these defenses – meaning it is entirely unclear what additional discovery is needed at this stage of the case. We therefore conclude that inclusion of the proposed defenses will not jeopardize the trial date and that there is no material prejudice in allowing these defenses to be litigated on the merits.

Next, Plaintiffs claim that the proposed defenses are futile as a matter of law. Plaintiffs argue that an email dated April 12, 2016 cannot support a fraudulent inducement claim because it does not contain a material misrepresentation, nor does it provide any evidence of justifiable reliance. *See Tomasini v. Mount Sinai Med. Cntr.*, 315 F. Supp. 2d 1252 (S.D. Fla. 2004) (finding that a fraudulent inducement claim must include "a a misrepresentation of a material fact."). Plaintiffs argument is misplaced, however, because – if we accept the allegations as true – the proposed defense alleges every required element for a fraudulent inducement claim. Plaintiffs, of course, take issue with whether the misrepresentation was material or not, and whether Ms. Croce could have justifiably relied on it. But, those are factual inquiries that are best reserved on either a motion for summary judgment or for the jury to decide. Neither of Plaintiff's argument undermines the plausibility that Plaintiffs engaged in fraudulent inducement. Therefore, we cannot conclude that Defendant's fraudulent inducement defense fails as a matter of law.

Plaintiffs' argument with respect to the duress defense is equally unavailing. There are three required elements to allege duress under Florida law: (1) that one side involuntarily accepted the terms of another, (2) that circumstances permitted no other alternative, and (3) that the circumstances were the result of coercive acts of the opposite party. *See, e.g.*, *City of Miami v. Kory*, 394 So. 2d 494, 497 (Fla. 3rd DCA 1981). Plaintiffs contend that duress cannot exist because an attorney represented Ms. Croce at all material times and that her lawyer spent nine months

negotiating the agreement with opposing counsel. While we agree that "the opportunity to consult an attorney is a factor for the Court to consider and weigh along with the other evidence in the case . . . it does not foreclose a finding of duress." *Corporacion Peruana de Aeropuertos y Aviacion Comercial v. Boy*, 180 So. 2d 503, 506 (Fla. 2nd DCA 1965).

Plaintiffs also argue that the duress defense fails because there was no involuntary act nor anything in the record to show that a coercive statement had any effect on Ms. Croce. But, this is a weak argument at the pleading stage because Plaintiffs ignore Ms. Croce's deposition testimony that Plaintiffs threated to watch her burn if she refused to sign the agreement. Plaintiffs suggest that the threat is not credible, but we do not have a factual record to make that determination. Accordingly, the proposed defense is plausible, and it includes each required element to state a claim.

The final issue is whether Defendant has standing to raise these affirmative defenses. Plaintiffs argue that Ms. Croce did not interpret Plaintiffs' remarks – about watching her burn – as a threat. Instead, Plaintiffs claim that Defendant is making unsupported inferences and that – if Ms. Croce felt coerced or under duress – it is her responsibility to file a lawsuit. Plaintiff's argument fails for so many reasons that we need not consider it with any serious attention. We do note, however, that Plaintiffs failed to support their argument with *any* relevant legal principles or case law. And we decline to do the research that Plaintiffs should have done in the first instance. Accordingly, Defendant's motion for leave to amend its

affirmative defenses is **GRANTED**.  The ultimate merit, or lack thereof, behind these defenses will have to be assessed at summary judgment or at trial.

## *IV. CONCLUSION*

For the foregoing reasons, Defendant's motion for leave to amend its affirmative defenses is **GRANTED**.  Defendant shall promptly file an amended answer on the docket.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 2nd day of August, 2019.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge